**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| IN RE: | ) | Bktcy. 20-20875-CMB |
| | ) | |
| NASH BUILDING COMPANY, | ) | Chapter 7 |
| | ) | |
| DEBTOR | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ROBERT H. WYCHE, | ) | Doc. # ____ |
| | ) | |
| Movant, | ) | Related Doc. # 18, 23, 26, 31, 34, |
| | ) | 35, 37 |
| v. | ) | |
| | ) | Hearing Date: |
| NASH BUILDING COMPANY; | ) | |
| MONROE NASH; TERRA | ) | Hearing Time: |
| INVESTMENTS, LLC; and ROBERT | ) | |
| SHEARER, CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Respondent(s). | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**BRIEF IN SUPPORT OF MOTION TO COMPEL**

COMES NOW the Movant, Robert H. Wyche ("Mr. Wyche"), by his undersigned counsel, and files the within Brief, as follows:

**I.    INTRODUCTION**

Before the Court is Mr. Wyche's Motion to Compel (the "Motion," Doc. # 18), as supplemented by the Supplement to Motion to Compel (Doc. # 34), wherein he requested information from the Debtor, Nash Building Company ("Debtor"), its principal, Monroe Nash ("Mr. Nash"), and another entity controlled by Mr. Nash known as Terra Investments, LLC ("Terra") pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004").

After helping itself to the benefits of bankruptcy, Debtor refused to provide complete responses to Mr. Wyche's Rule 2004 document requests, and Mr. Nash and Terra have refused to

provide any documents. Therefore, Mr. Wyche has sought relief in the Motion. Debtor, Mr. Nash and Terra have opposed the relief requested in the Motion (the "Objection," Doc. # 23). As detailed below, the Chapter 7 Trustee, Robert Shearer ("Trustee") and another creditor, Knickerbocker Russell Co., Inc. ("Knickerbocker") have joined in the relief requested in the Motion. See Doc. # 35, 37.

This brief is respectfully submitted pursuant to the Court's Order of January 20, 2021 (Doc. # 31).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Pre-Petition History

As detailed in the Motion (which is hereby incorporated by reference), Mr. Wyche hired Debtor to build his "dream home." Mr. Nash is a builder based in Sewickley, Pennsylvania, with more than thirty (30) years of experience in building and restoration of residential and commercial structures. See Motion, ¶ 7; Objection, ¶ 7. Mr. Nash owns, operates and/or controls both Debtor (see Motion, ¶ 11; Objection, ¶ 11) and Terra (see Motion, ¶ 9; Objection, ¶ 9). Debtor and Terra have the same office address (see Motion, ¶¶ 8, 10; Objection, ¶¶ 8, 10), and are represented by the same legal counsel (see Motion, ¶ 12; Objection, ¶ 12).

Debtor's work on the Project was delayed, shoddy and unworkmanlike, ultimately forcing Mr. Wyche to hire someone else to complete the Project and fix Debtor's mistakes. To recover those damages, Mr. Wyche sued the Debtor in state court (Court of Common Pleas of Allegheny County, docket number GD-17-017489), proceeding through the pleadings, discovery (including the retention of experts and preparation of expert reports), and pretrial stages. Seven (7) days before trial was scheduled to begin, the Debtor filed this bankruptcy case to stop the trial. See Motion, ¶ 17; Objection, ¶ 17.

B.    **Bankruptcy Filing**

Debtor, a corporate entity which will not receive a discharge and having no or *de minimis* assets per its bankruptcy schedules, filed this highly curious Chapter 7 case on March 6, 2020 ("Petition Date"). Mr. Nash signed the Debtor's bankruptcy petition. See Doc. # 1, item 17. Debtor filed its completed Schedules, Statement of Financial Affairs, and related items on April 3, 2020 (Doc. # 12). Mr. Nash is the sole member and owner of the Debtor and was the only individual in possession of the Debtor's books of account and records when the bankruptcy was filed. See Statement of Financial Affairs, Items 26(c)(1) and 28 (Doc. # 12).

Debtor paid its bankruptcy retainer to counsel more than six (6) months before this bankruptcy case was filed (see Statement of Financial Affairs, Item 11.1 (Doc. # 12); see also Motion, ¶ 18; Objection, ¶ 18), thereby demonstrating that this bankruptcy filing was planned well in advance.[1] After the Debtor paid its bankruptcy retainer to counsel, and just six (6) weeks before the bankruptcy case was filed, Mr. Nash caused the Debtor to transfer a sport utility vehicle titled in the Debtor's name to himself. See Statement of Financial Affairs, Item 13.1 (Doc. # 12); see also Motion, ¶ 21; Objection, ¶ 21.

C.    **Mr. Wyche's Attempts to Obtain Information Under Rule 2004**

Based on the information obtained to date, Mr. Wyche questions the propriety of the relationship amongst Debtor, Mr. Nash and Terra, and believes that Mr. Nash may be continuing Debtor's business under his own name, under Terra's name, or under some other unknown entity. As such, Mr. Wyche has been attempting to obtain information under Rule 2004 in order to evaluate whether Mr. Nash and/or Terra (or potentially some other as yet identified entity)

---

[1] Even though the bankruptcy was planned at least six (6) months in advance, Debtor requested (Doc. # 7), and obtained by default order, an extension of time to complete its bankruptcy schedules, thereby further delaying these proceedings.

3

may be liable to creditors under various theories of liability, including without limitation piercing the corporate veil, successor liability, breach of fiduciary duty, and/or usurpation of corporate opportunities of the Debtor. These claims, should they exist, appear to be the only potential assets available for creditors based on the Debtor's schedules.

Mr. Wyche served document requests under Rule 2004 (the "Document Requests") to the Debtor, Mr. Nash, and Terra on June 16, 2020, which are attached to the Motion as Exhibit "1." Mr. Wyche also gave notice of his intent to subpoenas upon Mr. Nash and Terra on September 29, 2020, copies of which are attached to the Motion as Exhibit "2" (collectively, the "Subpoenas"). The Document Requests and Subpoenas seek targeted information necessary to evaluate the potential claims against Mr. Nash and Terra referenced above.

Debtor, Mr. Nash and Terra have adamantly opposed those efforts, and have notified Mr. Wyche of their objections thereto and of their objections to examinations under oath as requested by Mr. Wyche pursuant to Rule 2004.

### D.      **The Motion to Compel**

Given the refusal to respond to the Discovery Requests and Subpoenas, on October 2, 2020, Mr. Wyche was forced to file the Motion. Debtor, Mr. Nash, and Terra objected to the Motion (Doc. # 23). While the Debtor has begrudgingly responded to most of the Document Requests (albeit incompletely, as noted below), Mr. Nash and Terra have flatly refused to provide *any* of the information requested in either the Discovery Requests or the Subpoenas.

The Court previously directed the parties to meet and confer to attempt to resolve their differences, and the parties, through counsel, did so. As detailed in the Joint Status Report filed

December 3, 2020 (Doc. # 26), the parties have been able to resolve many of their disputes concerning the Debtor, but none of their disputes concerning Mr. Nash and Terra.[2]

### E. The Joinders of the Trustee and Knickerbocker and Discovery of New Information

On February 26, 2021, Robert Shearer, in his capacity as Chapter 7 Trustee (the "Trustee"), joined in the relief requested in the Motion (Doc. # 35). Another creditor who was not given notice of the bankruptcy and only recently became aware of same, Knickerbocker Russell Co., Inc. ("Knickerbocker"), also joined in the relief requested in the Motion (Doc. # 37).

Additionally, Knickerbocker affirmatively provided documents to Mr. Wyche's counsel which call the accuracy and completeness of the documents previously produced by the Debtor into question, and underscore the need for full disclosure from the Debtor, Mr. Nash, and Terra. Among the documents produced by Knickerbocker is a check drawn on Terra's account to pay Debtor's debt to Knickerbocker, which appears to have been signed by Mr. Nash, who also appears to have hand-written the Debtor's name on the top of the check. Upon receipt of these documents, Mr. Wyche filed his Supplement to Motion, attaching copies of the documents produced by Knickerbocker (Doc. # 34).

The documents produced by Knickerbocker were not previously produced by the Debtor, Mr. Nash, or Terra, even though Mr. Wyche specifically requested copies of checks from any accounts maintained by Debtor or Terra during the time period in which the check was written. Likewise, the spreadsheet provided to Mr. Wyche in response to his request for documentation of

---

[2] The specific issues which remain in dispute between the parties are identified in the charts attached to the Motion as Exhibits "1," "2," and "3." These exhibits pertain to, respectively, the open issues in the discovery directed to, Debtor, Mr. Nash, and Terra. The descriptions of the documents requested in these Exhibits is a short-form reference to the documents at issue. The specific documents requested are defined in detail in the Discovery Requests and Subpoenas. For example, Discovery Request 1(h) references "Debtor's bank records." The specific bank records requested in connection with Discovery Request 1(h) are defined in the Discovery Requests as "[s]tatements and related records (including without limitation the front and back of checks) for any bank account in which the Debtor had an interest in the four-year period prior to [March 6, 2020] through present."

transfers among the Debtor, Mr. Nash and Terra during the four-year period prior to the Petition Date does not disclose Terra's payment of Debtor's debt to Knickerbocker. These documents validate the concerns Mr. Wyche has been raising since the Petition Date.

Had an ***unscheduled creditor*** not happened to become aware of the bankruptcy filing on its own and affirmatively produced these documents, neither the Court, the Trustee, nor Mr. Nash would have known about them. One can only imagine what else might be discovered given Mr. Nash and Terra's staunch refusal to respond to a single request for information under Rule 2004.

### III. **OVERVIEW OF APPLICABLE LAW**

#### A. **Overview of Rule 2004**

Under Rule 2004(a), "[o]n motion of any party in interest, the court may order the examination of any entity." Rule 2004(b) sets forth the scope of such an examination, and states in pertinent part that "[t]he examination of **any entity** under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, **or to any matter which may affect the administration of the debtor's estate**…" (emphasis added). Furthermore, Rule 2004(c) authorizes a party in interest to compel the production of documents in connection with a Rule 2004 examination. Accordingly, the plain text of Rule 2004 states: i) **who can take** an examination or request documents; ii) **who can be examined** and/or required to produce documents; and iii) the **scope** of the examination or request for documents. Each of these three (3) questions are relevant to this dispute, and are evaluated below. The purposes of Rule 2004 are to reveal the nature and extent of the bankruptcy estate, ascertain whether assets exist, and to discovery whether any wrongdoing has occurred. In re Mavashev, 559 B.R. 332 (Bankr. E.D.N.Y. 2016).

**B.      Who Can Take Examinations or Request Documents Under Rule 2004?**

With respect to who can take an examination or request documents, by Rule 2004's express terms, any "party in interest" may do so. See Rule(a) and (c). 11 U.S.C. § 1109, relating to the right to be heard in Chapter 11 cases, contains a non-exhaustive list of "parties in interest" (at least for purposes of § 1109), and includes "…the debtor, the trustee, a creditors' committee, an equity security holders' committee, **a creditor**, an equity security holder, or any indenture trustee." Id. (emphasis added). The Third Circuit has opined that the term "parties in interest" should be broadly construed, at least in the context of § 1109. In re Amatex Corp., 755 F.2d 1034, 1042 (3d. Cir. 1985).

Since neither the Bankruptcy Code (outside of § 1109) nor the Federal Rules of Bankruptcy Procedure otherwise define the term "party in interest," Courts interpreting who qualifies as a "party in interest" for Rule 2004 purposes have referenced the § 1109 definition as a non-exhaustive list and something of a starting point for Rule 2004 purposes. See generally In re Countrywide Home Loans, Inc., 384 B.R. 373 (Bankr. W.D. Pa. 2008 (Agresti, J.). For purposes of Rule 2004, the term "party in interest" is to be "liberally construed." In re Alem, 2013 WL 4840486 (Bankr. D.C. 2013). Other courts have noted that "…a party in interest for purposes of Rule 2004 is one 'whose pecuniary interest is directly affected by the bankruptcy proceeding.'" In re Martino, 2011 WL 5856327 (Bankr. D. Col. 2011) (quoting In re Aronson, 1994 WL 497541 at *6 (E.D. Pa. 1994)). In Martino, the Court conclusively held that **creditors are "parties in interest" for purposes of Rule 2004**. Id. (emphasis added).

The expansive scope of the term "party in interest" for purposes of Rule 2004 is highlighted by the case of In re Summit Corp., 891 F.2d 1 (1st Cir. 1989), which held that the losing bidder in an asset sale otherwise having no involvement in the bankruptcy or with the

7

debtor whatsoever is entitled to information under Rule 2004-from a non-debtor no less.  In Summit, the debtor owned 70% of a third-party corporation, and its 70% interest was offered for sale in the bankruptcy case.  Two bidders appeared at the auction:  1) the owner of the other 30% of the corporation; and 2) a competitor of the corporation.  When the competitor lost the auction, it sought information from the corporation it was trying to purchase the 70% interest in under Rule 2004.  Under these facts, the Court held that discovery under Rule 2004 was proper, noting "Rule 2004 is broad in nature, and failure to construe the term broadly would be "contrary to the goal of maximizing the value of the estate and would undermine the process of disposing of its assets."  Id. at 5.

### C. Who Can Be Examined or Required to Produce Documents Under Rule 2004?

Rule 2004(b) expressly provides that "**any entity…or the debtor**" can be subject to an examination or document request.  Id. (emphasis added).  Since Rule 2004's application is not limited to the debtor, non-debtors may be examined or required to produce documents, including without limitation, insiders of the Debtor and other corporate entities in which the debtor has an interest.  See generally Norton Bankruptcy Law and Practice 3d., § 163.75 ("Persons Who May Be Examined").  Courts have specifically held that officers of a bankrupt company may be examined and compelled to produce documents (Bronston v. U.S., 93. S.Ct. 595 (1972))[3], as can non-debtor entities under common ownership with the Chapter 7 debtor (In re Golden Grove Pecan Farm, 460 B.R. 349 (Bankr. M.D. Ga. 2011)).

### D. What is the Scope of an Examination or Document Request Under Rule 2004?

It is well established that the scope of an examination or document request under Rule 2004 is "broad and unfettered."  In re GHR Energy Corporation, 33 B.R. 451 (Bankr. D. Mass.

1983). At least one Court has characterized the scope of Rule 2004 as a legally permissible "fishing expedition." In re Duratech Indus., 241 B.R. 283 (E.D.N.Y. 1999). The examination or document request need only relate to "…the acts, conduct or property…or liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." See Rule 2004(b). This broad scope is consistent with the purposes of Rule 2004, namely, to reveal the nature and extent of the bankruptcy estate, ascertain whether assets exist, and to discover whether any wrongdoing has occurred. In re Mavashev, 559 B.R. 332 (Bankr. E.D.N.Y. 2016).

IV. **ARGUMENT**

    A. **Mr. Wyche, the Trustee and/or Knickerbocker are Entitled to Request Documents and Take Examinations Because They are "Parties in Interest"**

In order to have standing to request documents and take examinations under Rule 2004, the party seeking to so do must be a "party in interest." According to Debtor's schedules, Mr. Wyche is, by far, the largest creditor of the Debtor. More specifically, per item 3.7 in Debtor's Schedule E/F (Doc. # 12), Mr. Wyche's claim is listed at $359,890.04. Debtor's total scheduled liabilities are $433,574.80 per the Summary of Assets and Liabilities for Non-Individuals (Doc. # 12).

As discussed above, for purposes of Rule 2004, courts broadly construe the term "party in interest." See In re Summit Corp., 891 F.2d 1 (1st Cir. 1989). Creditors are specifically identified as "parties in interest" under § 1109, which is often used as a "starting point" for Rule 2004 purposes. See In re Countrywide Home Loans, Inc., 384 B.R. 373 (Bankr. W.D. Pa. 2008) (Agresti, J.). Since any party whose pecuniary interests may be affected by the bankruptcy is a

---

[3] This is true even if the individual is no longer an officer of the company.

9

"party in interest," creditors qualify as such.  In re Martino, 2011 WL 5856327 (Bankr. D. Col. 2011) (quoting In re Aronson, 1994 WL 497541 at *6 (E.D. Pa. 1994)).

Applying the foregoing to the facts before the Court, Mr. Wyche is clearly a party in interest entitled to obtain information and take an examination under Rule 2004.  So too is Knickerbocker, as it too is a creditor.  Finally, the Trustee is also a party in interest, given the specific references to "trustees" as parties in interest under § 1109 and given the Trustee's duties under 11 U.S.C. § 704(a), which include, *inter alia*, to "investigate the financial affairs of the debtor" and "collect and reduce to money the property of the estate…"

Finally, arguments have been raised on behalf of the Debtor, Mr. Nash, and Terra in prior hearings that their position on the information requested by Mr. Wyche under Rule 2004 "might" be different if the Trustee were requesting the documents, since the Trustee would ordinarily bring claims on behalf of the estate against third parties.  Initially, this argument is mooted by the Trustee's joinder to the Motion.  However, even if the Trustee had not joined in the Motion, at least one court has rejected the very argument the Debtor, Mr. Nash and Terra make here.

In Martino, a creditor wished to conduct a Rule 2004 examination focusing on pre-petition transfers that might be recoverable under § 544 of the Bankruptcy Code.  The Debtor opposed the Rule 2004 request on the basis that only the Trustee could bring such a claim.  The Court expressly rejected that argument, holding that the creditor was entitled to the information so long as the creditor qualified as a "party in interest."

The primary purposes of Rule 2004 are to ascertain whether assets exist and to discover whether any wrongdoing has occurred.  In re Mavashev, 559 B.R. 332 (Bankr. E.D.N.Y. 2016).  This is precisely what Mr. Wyche, the Trustee, and Knickerbocker are attempting to do in this case.

### B. Debtor, Mr. Nash, and Terra Are All Required to Produce Documents and Be Examined Under Oath Under Rule 2004

As discussed above, Rule 2004(b) expressly provides that "**any entity…or the debtor**" can be subject to an examination or document request. Id. (emphasis added). This language makes it clear that Rule 2004 examinations and document requests are not limited to the Debtor, and is consistent with the underlying goal of Rule 2004: discovery of assets and exposure of wrongdoing. In re Mavashev, 559 B.R. 332 (Bankr. E.D.N.Y. 2016). As noted above, Courts have specifically held that the individuals who control a corporate debtor (like Mr. Nash), and non-debtor entities under common ownership with the Debtor (like Terra)-are proper subjects of document requests and examination under Rule 2004. See respectively Bronston v. U.S., 93. S.Ct. 595 (1972) and In re Golden Grove Pecan Farm, 460 B.R. 349 (Bankr. M.D. Ga. 2011).

The Golden Grove case involved, among other things, a Chapter 7 Trustee's attempt to subpoena documents from entities controlled by the same individual as the debtor. The non-debtors objected on the basis that nondebtor parties were not proper targets of a Rule 2004 examination. The Court summarily rejected this argument, holding that such contention "…was directly contradicted by the language of Rule 2004(a)." Id. at 352.

Since Mr. Nash owns, operates and controls both the Debtor and Terra, it is clear that both Mr. Nash and Terra are subject to Rule 2004. Shielding them from inquiry under Rule 2004-the very application of which results from the decision to seek bankruptcy protection on behalf of Debtor-would be contrary to the express revisions thereof, and undermine the entire purpose of Rule 2004. A common asset in bankruptcy cases are claims against the Debtor's management and insiders relating to their dealings with the Debtor. If those who control the Debtor and are affiliated with it are not required to comply with Rule 2004, it would be virtually impossible to investigate whether such claims exist.

Debtor, Mr. Nash, and Terra are all subject to Rule 2004, and the Court should require them to produce the requested documents and sit for examinations as requested in the Motion.

    **C.**    **The Information Requested in the Discovery Requests and Subpoenas is within the Scope of Rule 2004(b)**

    *1.*    *The Scope of Rule 2004 is Extremely Broad*

As noted above, document requests and examinations under Rule 2004 are permitted to be "broad and unfettered" (In re GHR Energy Corporation, 33 B.R. 451 (Bankr. D. Mass. 1983)), and have even been likened to a legally permissible "fishing expedition" (In re Duratech Indus., 241 B.R. 283 (E.D.N.Y. 1999)). All that is required is that the information requested relate to "…the acts, conduct or property…or liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Rule 2004(b). This broad scope is consistent with the purposes of Rule 2004, namely, to reveal the nature and extent of the bankruptcy estate, ascertain whether assets exist, and to discover whether any wrongdoing has occurred. In re Mavashev, 559 B.R. 332 (Bankr. E.D.N.Y. 2016). Here, the documents and examinations requested are well within the scope of Rule 2004 because they directly relate to the acts, conduct or property, or liabilities and financial condition of the debtor, or to any matter which impacts administration of the Debtor's estate, as detailed below.

    *2.*    *The Information Requested is Directly Relevant to Estate Assets and Administration, Which is Within the Scope of Rule 2004*

Fundamental to the administration of the bankruptcy estate is identification of potential estate assets which could be liquidated for the benefit of creditors. Based on the Debtor's schedules, there are no assets available for liquidation. The Trustee has conducted the § 341 meeting, but given the uncertainty surrounding whether potential claims against Mr. Nash and

12

Terra exist, has neither reported the case as a "no asset case" nor given creditors notice of the need to file proofs of claim due to the discovery of estate assets.

If Mr. Nash, Terra, or some other person or entity may be held liable for the Debtor's debts (among other claims), then there may be assets available to be liquidated for the benefit of creditors. The question of whether Mr. Nash, Terra, or some other person or entity can be held liable for the Debtor's debts is the focus of the information being sought by Mr. Wyche under Rule 2004. See Motion, Exhibits "1" (Discovery Request) and "2" (Subpoenas).

As Mr. Wyche has noted in his pleadings, there are several potential theories under which Mr. Nash and Terra could be held liable for the Debtor's debts under applicable law. Two of these theories include piercing the corporate veil and successor liability. To demonstrate how the information requested in the Discovery Requests and Subpoenas relates to these theories (and therefore relates to estate administration and/or the acts, assets, liabilities and financial condition of the Debtor), each is examined in turn.

> 3. *The Discovery Requests and Subpoenas Request Information Relevant to a Piercing the Corporate Veil Theory and are Therefore Within the Scope of Rule 2004*

"…[T]he corporate entity should be recognized and upheld, **unless specific, unusual circumstances call for an exception**." Zubik v. Zubik, 384 F.2d 267, 273 (3d. Cir. 1967) (applying Pennsylvania law) (emphasis added). There is no definitive test for piercing the veil in Pennsylvania (First Realvest Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. 1991)), and instead, Courts consider the "totality of the circumstances." Plastipak Packaging, Inc. v. DePasquale, 75 Fed. Appx. 86, 88 (3d. Cir. 2003) (applying Pennsylvania law).

As the law has developed over time, two distinct forms of veil-piercing have emerged in Pennsylvania. The first, and traditional form of veil piercing is sometimes referred to as the

"alter ego" theory. Under the "alter ego" theory, liability for the corporate entity's debts is imposed upon the individual(s) who controls the corporation. Advanced Telephone Systems, Inc., v. Com-Net Professional Mobile Radio, LLC, 846 A.2d 1264 (Pa. Super. 2004). Commentators have noted that this form of liability focuses on whether "…equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder." 12 Summ. Pa. Jur. 2d Business Relationships § 1:28 (2d Ed.).

Among the factors most commonly considered by Courts in determining whether veil-piercing is appropriate are: i) whether corporate formalities were observed and corporate records kept; ii) whether officers and directors other than the dominant shareholder actually function; and iii) whether the dominant shareholder has used the assets of the corporation as if they were his or her own. Mark Hershey Farms, Inc. v. Robinson, 171 A.3d 810 (Pa. Super. 2017); Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87 (Pa. Super. 2007).

If this theory applies, Mr. Nash could be held responsible for the Debtor's debts. The information requested in the Discovery Requests and Subpoenas which has not been responded to is directly relevant to potential liability under an "alter ego" theory. For example, Debtor has refused to provide copies of its invoices during the requested time period. These invoices would show where payments were to be sent and to whom they were to be made payable. This information would be directly relevant to a potential "alter ego" theory. The information obtained to date already suggests that: i) Debtor did not observe corporate formalities or maintain corporate records; ii) there were no officers, directors, or shareholders other than Mr. Nash, such that he, as sole shareholder, dominated Debtor's affairs; and iii) Mr. Nash used the assets of the Debtor as if they were his own, such as by causing the Debtor to transfer the sport

utility vehicle to himself prior to the bankruptcy filing and continuing to have the Debtor pay him through the Petition Date even though the Debtor allegedly ceased business operations prior to 2020.

A new and developing form of veil-piercing is the "enterprise entity" or "single entity" theory, which applies when "…two or more corporations share common ownership and are, in reality, operating as a corporate combine."  Miners, Inc. v. Alpine Equipment Corp. 722 A.2d 691, 695 (Pa. Super. 1998).  Under this theory, "…two or more corporations are treated as one because of identity of ownership, unified administrative control, similar or supplementary business functions, involuntary creditors, and insolvency of the corporation against which the claim lies."  Id.[4]

If this theory applies, Terra could be held responsible for the Debtor's debts.  The information requested in the Discovery Requests and Subpoenas which has not been responded to is directly relevant to potential liability under a "single entity" theory.  By its nature, an "single entity" theory requires a comparison between two entities:  here, Debtor and Terra.  Since Terra has refused to respond to any discovery (and Debtor has refused to respond to some of the requests which focus on its operations), Debtor, Mr. Nash, and Terra have made it impossible to conduct the analysis.  For example, to determine whether Debtor and Terra and similar or supplementary business functions or creditors, Mr. Wyche requested that each entity produce documentation of its employees, subcontractors, and accounts receivable/accounts payable reports.  Terra has refused to provide any of this information.  The Debtor has refused to

---

[4] For the sake of candor to the tribunal, it must be noted that courts applying Pennsylvania law are divided on the issue of whether "enterprise entity" or "single entity" veil-piercing claims are viable.  The case of Macready v. TCI Trans Commodities, A.G., 2011 WL 4835829 (E.D. Pa. 2011), provides a detailed overview of the various schools of thought that have developed concerning the "single entity" theory.

provide documentation of its subcontractors, and claims it has no accounts receivable or accounts payable reports.

The information obtained to date already suggests that the Debtor and Terra had common ownership and unified administrative control, and Debtor is clearly insolvent by virtue of its bankruptcy schedules. The Debtor, Mr. Nash, and Terra's refusal to provide all of the "pieces of the puzzle" makes it impossible to create a clear picture of each and their relationship and connections. This is exactly what Rule 2004 is designed to do.

>  *4.  The Discovery Requests and Subpoenas Request Information Relevant to a Successor Liability Theory and are Therefore Within the Scope of Rule 2004*

Another potential basis for liability against Mr. Nash and/or Terra is "successor liability." In Pennsylvania, where one entity acquires the assets of another, generally, the acquiring entity does not become responsible for another company's debts. Continental Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1291 (Pa. 2005). However, this general rule can be overcome if one of five exceptions are established. Id. These exceptions include, *inter alia*, where "…the purchasing corporation was merely a continuation of the selling corporation; …the transaction was fraudulently entered into to escape liability…[or] the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation." Id.

With respect to the "continuation of business" theory, Courts initially look to the identity of the officers, directors, and shareholders of the two entities (see generally Morales v. Crompton & Knowles Corp., 888 F. Supp. 682 (E.D. Pa. 1995) (applying Pennsylvania law); and Bogart v. Phase II Pasta Machines, Inc., 817 F. Supp. 547 (E.D. Pa. 1993) (applying Pennsylvania law). Identity of officers, directors, and shareholders favors imposition of successor liability. Additionally, Courts also consider the following to whether successor liability is appropriate

16

under the "continuation of business" theory: i) retention of the same employees; ii) retention of the same supervisory personnel; iii) retention of the same production facilities and location; iv) production of the same products; v) retention of the same name; vi) continuity of assets; vii) continuity of general business operations, and (viii) whether the successor holds itself out as the continuation of the previous enterprise. Action Mfg. Co., Inc. v. Simon Wrecking Co., 387 F. Supp. 2d 439 (E.D. Pa. 2005) (applying Pennsylvania law).

If successor liability applies, then Mr. Nash and/or Terra could be held responsible for the Debtor's debts. Much of the information Mr. Wyche requested to evaluate a claim for "single entity" liability under a veil-piercing theory would also apply to evaluation of a successor liability claim. For example, Mr. Wyche requested documentation of Terra's employees and subcontractors, but Terra refuses to provide the information. Similarly, Mr. Wyche requested documentation of Mr. Nash's sources of income to determine if he has simply continued the Debtor's business under his own name, but he has refused to provide same. This information is well within the scope of Rule 2004, and should be provided. Thanks to Knickerbocker, we now know that Mr. Nash had Terra pay Debtor's invoices on at least one (1) occasion. Discovery will demonstrate if such conduct was an outlier, or the norm.

> 5. *The Countrywide Decision Supports the Relief Requested*

In their Objection, the Debtor, Mr. Nash and Terra argue that the information requested in the Discovery Requests and Subpoenas is "overly broad," "general," and "incredibly intrusive." In an attempt to justify their refusal to comply with Rule 2004, Debtor, Mr. Nash and Terra attempt to find support in Judge Agresti's opinion in In re Countrywide Home Loans, 384 B.R. 373 (Bankr. W.D. Pa. 2008).

In <u>Countrywide</u>, the underlying bankruptcy case was not a traditional bankruptcy proceeding filed by a debtor, but rather a miscellaneous proceeding involving the consolidation and assignment of various matters involving Countrywide's practices in *other* bankruptcy cases in the Western District of Pennsylvania. The miscellaneous proceeding arose in part from the infamous case of <u>In re Sharon Hill</u>, 01-22574-JAD. The United States Trustee sought to conduct Rule 2004 examinations of representatives of Countrywide relative to its practices and procedures in ten (10) different bankruptcy cases pursuant to 11 U.S.C. § 307, which grants the United States Trustee broad authority to appear and be heard in bankruptcy cases. Countrywide objected on the basis that allowing the United States Trustee to conduct the requested Rule 2004 examinations under those circumstances would lead "…to an unregulated 'free for all' of examinations by parties in interest." The Court flatly rejected this argument, and in fact allowed the United States Trustee to conduct the requested Rule 2004 examinations. However, the Court did create a sliding scale approach based on the totality of the circumstances involved in that case.

Unlike the situation in <u>Countrywide</u>, Mr. Wyche is not attempting to conduct a broad examination of a particular creditor's practices in multiple bankruptcy cases filed in this district over multiple years in a miscellaneous proceeding not filed by a debtor in bankruptcy. To the contrary, Mr. Wyche is requesting information in one (1) particular Chapter 7 case in which he is, by far, the largest creditor. The information sought is directly relevant to potential assets that may exist and which could be a source of distribution to creditors; in fact, these are the only assets which appear to be available. All of the information directly relates to the relationship between the Debtor, the man who controls the Debtor, and another company which that man also

controls, such that it can be determined whether that man (Mr. Nash) and his other company (Terra) might be responsible for the Debtor's debts, or otherwise liable to creditors.

Finally, even if the Discovery Requests and Subpoenas were equal in scope and breadth to the Countrywide case (which they clearly are not), the fact remains that Judge Agresti *authorized* the Rule 2004 Examinations to go forward. If the Court concludes that any of the Discovery Requests, Subpoenas, or topics of oral examination require refinement, it has the power to so order. Assuming for the sake of argument that refinement is required, the proper remedy is for the Court to impose appropriate limitations, not give the Debtor, Mr. Nash and Terra a "free pass" to avoid any discovery.

### V.  CONCLUSION

Based on the foregoing argument and legal authority, Mr. Wyche, the Trustee, and Knickerbocker respectfully request that the Court enter an Order, substantially in the form of the proposed order submitted with this brief, granting the Motion and directing the Debtor, Mr. Nash, and Terra to provide full and complete responses to all of the Discovery Requests and Subpoenas, and authorizing Mr. Wyche, the Trustee, and/or Knickerbocker to conduct a broad, unfettered examination under oath of Mr. Nash, individually and as representative of Debtor and Terra, in order to determine if claims may exist against them, as detailed in this brief.

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

By: */s/ Roger P. Poorman*
Roger P. Poorman, Esquire
PA ID No. 206562
535 Smithfield Street, Suite 800
Pittsburgh, PA  15222
Telephone: (412) 918-1100
rpoorman@metzlewis.com
*Counsel for Movant*